1   George N. Koumbis (SBN 246855)
2   Shelby A. Cummings (SBN 324322)
    **ARENT FOX LLP**
3   555 West Fifth Street, 48th Floor
    Los Angeles, CA  90013-1065
    Telephone:  213.629.7400
4   Facsimile:   213.629.7401
    Email:      george.koumbis@arentfox.com
5               shelby.cummings@arentfox.com

6   Attorneys for Plaintiffs
    BRAMAN MOTORS, INC. d/b/a
7   BRAMAN BMW, and BRAMAN MOTOR
    CARS, INC. d/b/a BRAMAN BMW WEST
8   PALM BEACH

9                    UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12   BRAMAN MOTORS, INC. d/b/a         | Misc. Case No. 2:20-mc-00025
13   BRAMAN BMW, et al.
                                         Underlying Case No. 1:17-cv-23360-
14              Plaintiffs,              DPG pending in the Southern District of
                                         Florida
15        v.
                                         **MISCELLANEOUS MOTION**
16   BMW OF NORTH AMERICA,              **RELATED TO SUBPOENA FROM**
     LLC, et al.                        **ANOTHER DISTRICT**
17
                Defendant.              **JOINT STIPULATION RE:**
18                                      **PLAINTIFFS' MOTION TO**
                                        **COMPEL PRODUCTION OF**
19                                      **WITHHELD DOCUMENTS**

20

21                                      Discovery Cut-off:  September 14, 2020
                                        Motion Cut-off:     October 8, 2020
22                                      Status Conference:  November 10, 2020
                                        Trial:              March 8, 2021
23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.    PLAINTIFFS' INTRODUCTORY STATEMENT ........................................ 5

II.   EXPERIAN'S INTRODUCTORY STATEMENT ........................................ 7

III.  PLAINTIFFS' SUBPOENA TO PRODUCE DOCUMENTS ..................... 10

Definitions and Instructions ........................................................................ 10

Documents to Be Produced ......................................................................... 14

IV.   EXPERIAN'S RESPONSE TO SUBPOENA ............................................ 15

Specific Objections to the Instructions and Definitions.............................. 15

Time to Respond ......................................................................................... 16

Instructions ................................................................................................. 16

Definitions ................................................................................................... 17

V.    PLAINTIFFS' POSITION .......................................................................... 19

    A.    Experian Has Yet to Produce Fully Responsive Documents Related to Sales Loyalty and Service Effectiveness........................... 20

    B.    Documents in Experian's Possession Related to Sales Loyalty and Service Effectiveness are Relevant and Necessary...................... 20

    C.    There Is No Undue Burden on Experian and the Records Are Not Available from Any Other Source. ............................................... 21

VI.   EXPERIAN'S POSITION ........................................................................... 23

    A.    Procedural History ............................................................................ 23

    B.    Experian Discharged Its Duties under the Parties' Agreement .......... 26

    C.    The Documents Plaintiffs Seek Are Not Relevant Or Necessary ...... 28

    D.    Plaintiffs' Request Imposes Undue Burdens on Experian ................. 29

    E.    Experian Is Entitled to Reimbursement of Its Costs........................... 32

    F.    Plaintiff Is Not Entitled to Sanctions ................................................ 33

V.    CONCLUSION ........................................................................................... 33

    A.    Plaintiff's Conclusion ....................................................................... 33

    B.    Experian's Conclusion ...................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AECOM Energy & Construction, Inc. v. Ripley*
(C.D. Cal., Apr. 26, 2018, No. CV175398RSWLSSX) 2018 WL
4705914 ................................................................................................ 22

*Dart Indus. Co. v. Westwood Chem. Co.*,
649 F.2d 646 (9th Cir. 1980) ............................................................... 29

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*
(C.D. Cal., Apr. 29, 2019, No. CV 17-7639-SJO-KSX) 2019 WL
3069009 ................................................................................................ 22

*Legal Voice v. Stormans Inc.*,
738 F.3d 1178 (9th Cir. 2013) .............................................. 16, 32, 33

*Lemberg Law LLC v. Hussin*,
2016 WL 3231300 (N.D. Cal. June 13, 2016) ..................................... 18

*Painters Joint Comm. v. Employee Painters Tr. Health & Welfare
Fund*,
No. 2:10-cv-01385-JCM, 2011 WL 4549232 (D. Nev. Sept. 29,
2011) ..................................................................................................... 31

*Rainbow Sandals, Inc. v. Liberty Mut. Ins. Co.*,
2015 WL 12698302 (C.D. Cal. Aug. 25, 2015) ................................... 17

*Rivera v. NIBCO, Inc.*,
364 F.3d 1057 (9th Cir. 2004) ............................................................. 27

*Stormans Inc. v. Selecky*,
No. 07-cv-5374, 2015 WL 224914 (W.D. Wash. Jan. 15, 2015) ....... 33

*Sullivan v. Prudential Ins. Co. of America*,
233 F.R.D. 573 (C.D. Cal. 2005) ................................................... 21, 28

*Swanson v. ALZA Corp.*,
No. 12-cv-04579, 2013 WL 5538908 (N.D. Cal. Oct. 7, 2013) ......... 27

*United States v. C.B.S., Inc.*,
666 F.2d 364 (9th Cir. 1982) ................................................. 18, 29, 32

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

Driver's Privacy Protection Act ................................................................ 29

Fla. Stat. §§ 320.60-320.70 ....................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ............................................................................ 17

Fed. R. Civ. P. 26(e) ..................................................................... 13, 4, 17

Fed. R. Civ. P. 26(f)(1) ............................................................................. 27

Fed. R. Civ. P. 34(a)(1)(A) ...................................................................... 11

Fed. R. Civ. P. 45 .......................................................................... *Passim*

Fed. R. Civ. P. 45(d)(1) .................................................................. 8, 18, 29

Fed. R. Civ. P. 45(d)(3)(B)(i) ................................................................... 31

Local Rule 30(b)(6) .................................................................................. 23

Local Rule 37-1 ..................................................................................... 5, 6

Local Rule 37-2 ......................................................................................... 5

Local Rule 37-2.2 .................................................................................... 33

1    This Joint Stipulation is submitted by the undersigned parties pursuant to

2    Local Rule 37-2 in connection with Plaintiffs Braman Motors, Inc. d/b/a Braman

3    BMW, and Braman Motor Cars, Inc. d/b/a Braman BMW West Palm Beach's

4    (collectively "Plaintiffs") Motion to Compel Production of Withheld Documents

5    ("Motion to Compel", or, the "Motion").  In accordance with Local Rule 37-1, the

6    parties have met and conferred in good faith to resolve this dispute, but were unable

7    to do so.

8    **I.    PLAINTIFFS' INTRODUCTORY STATEMENT**

9    This discovery dispute arises from *Braman Motors Inc., et al. v. BMW of*

10   *North America, LLC*, 1:17-CV-23360-DPG currently pending in the Southern

11   District of Florida (the "Florida litigation").  The case is about how BMW of North

12   America, LLC ("BMW") unlawfully enhanced its control over franchised dealer

13   operations by fundamentally changing—unilaterally—its contractual relationship

14   with dealers through its imposition of arbitrary, coercive, and unfair business

15   practices that are intended to or have the effect of enhancing Defendants' profit

16   while reducing dealer profit.

17   Plaintiffs contend that Defendant's actions are part of an intentional unlawful

18   strategy, taking place industry-wide, to put more power in the hands of motor

19   vehicle manufacturers to the detriment of the dealerships.  Defendant's core

20   mechanism to implement their strategy is their Added Value Program ("AVP").

21   BMW doesn't set AVP objectives in order to gauge and reward good performance;

22   rather, BMW sets AVP objectives to ensure that 20% of all dealers fail and more

23   money is kept in BMW's pockets. BMW's AVP is not intended to be a "bonus" or

24   "incentive" program for dealers; rather, AVP is a self-serving, profit-driven effort

25   to reduce the dealers' gross profit margin and increase BMW's control over dealer

26   operations and customer pricing that strike at the very heart of the basic bargain of

27   the dealership model.  These unlawful practices damage BMW franchised dealers

28   across the Country.

In order to establish Plaintiffs' claims for breach of the express and implied terms of the parties' Dealer Agreement and for violation of Fla. Stat. §§ 320.60-320.70 (the "Dealer Act") and oppose Defendant BMW's defenses and counter claims related to sales performance, Plaintiffs' require the discovery of certain documents currently in the possession of Experian Information Solutions, Inc. ("Experian") related to the AVP.

On April 18, 2019, in accordance with Federal Rule of Civil Procedure 45, Plaintiffs' served a subpoena on third party Experian commanding production of documents for use in the Florida litigation (the "Subpoena"). The Subpoena requested, in part, that Experian produce "the data obtained, used, compiled, or considered by Experian in developing, designing, implementing and/or calculating Sales Loyalty and Service Effectiveness (or any other element of AVP), and any such data's reliability, accuracy, and efficacy" at the Los Angeles office of Arent Fox LLP, located at 555 W 5th Street, 48th Floor, Los Angeles, CA 90013. Experian initially objected to the Subpoena and provided a selection of responsive documents after meet and confer efforts; however, Experian failed to make a complete production.

On November 25, 2019 and December 27, 2019, counsel for Plaintiff sent meet and confer correspondence to counsel for Experian further detailing the withheld documents and demanding that Experian fully comply with the letter of Subpoena. On January 24, 2020 Plaintiffs' counsel sent a final meet and confer correspondence, pursuant to Central District of California Local Rule 37-1. The parties also met and conferred telephonically on December 10, 2019 and again on February 3, 2019. During the meet and confer, counsel for Plaintiffs' again reiterated the urgent need to obtain the withheld responsive documents. To date, the withheld responsive documents have not been produced.

The instant dispute focuses on the narrow issue of Experian's refusal to produce all responsive documents. Experian's improper withholding of

1    documentation in this case is frustrating Plaintiffs' discovery efforts and increasing

2    its costs of litigation. Experian should be compelled to produce all documents in its

3    possession responsive to the Subpoena, including, but not limited to, any

4    documents evidencing the auditing and testing of the Sales Loyalty and Service

5    Effectiveness methodologies and their underlying data. Despite Plaintiffs' diligence

6    in attempting to address these discovery issues without the Court's intervention,

7    Experian's refusal to fully comply with the Subpoena has unnecessarily delayed the

8    prosecution and any potential settlement of the Florida litigation.

9         Plaintiffs further expressly reserve the right to seek sanctions in connection

10   with this motion, and shall provide a complete recitation of the billing regarding

11   this matter with their supplemental brief.

12   ## II.    EXPERIAN'S INTRODUCTORY STATEMENT

13        This dispute dates back to April 18, 2019, when Plaintiffs served non-party

14   Experian Information Solutions, Inc. ("Experian") with an overbroad subpoena

15   demanding that Experian produce a wide array of documents and information.

16   While Plaintiffs claim that Experian failed to comply with their obligations under

17   the subpoena, Plaintiffs' motion completely ignores the significant burden Experian

18   has *already* incurred to review and produce responsive documents. More

19   significantly, Plaintiffs fail to mention that the parties previously agreed that

20   Experian would satisfy its burden of responding to Plaintiffs' subpoena if Experian

21   would run certain search terms *Plaintiffs* proposed. These search terms were not

22   narrow, and were plainly designed to seek much of the same information Plaintiffs

23   now seek. Indeed, the terms included: "BMW & 'Sales Loyalty'"; "BMW /10

24   'Sales Loyalty'"; "'Sales Loyalty' /10 problem"; "'BMW' & 'Service

25   Effectiveness'"; "'BMW /10 'Service Effectiveness'"; "'Service Effectiveness' /10

26   problem." (Declaration of Ryan Ball ("Ball Decl."), Ex. 6 at 2.) In good faith,

27   Experian ran these exact search terms, ultimately producing 438 documents and

28   expending over $20,000.

Unsatisfied with the production, Plaintiffs now seek a court-ordered do-over. Tellingly, Plaintiffs do not claim that Experian somehow deficiently ran their requested searches. Rather, Plaintiffs openly acknowledge that they incorrectly "assum[ed]" their search terms would return "documents evidencing the auditing and testing of the Sales Loyalty and Service Effectiveness methodologies and their underlying data." (Ball Decl., Ex. 8 at 1.) Plaintiffs should not be permitted to inflict further burden on Experian simply because they miscalculated what information would be returned based on the search terms they proposed. *See* Fed. R. Civ. P. 45(d)(1) (requiring subpoenaing parties to "take reasonable steps to avoid imposing undue burden or expense on" non-parties, like Experian). Indeed, Experian would not have agreed to run Plaintiffs' search terms without an understanding that doing so would discharge its obligations under the subpoena.

Even ignoring the parties' prior agreement, Plaintiffs' requests are overbroad and unduly burdensome. Plaintiffs generally seeks three types of information: (1) the data used to calculate Experian's Vehicles in Operation (sometimes called "VIO," "Units in Operation," or "UIO")[1] for the Service Effectiveness metric; (2) documents and communications concerning all testing and validation Experian did of the VIO data provided to third-party Urban Science in conjunction with BMW's Service Effectiveness metric; and (3) the rules and algorithms that Experian applied to its raw data to determine the VIO in a given zip code.[2]

Not only would producing this information impose an undue burden, it would also require Experian to disclose proprietary information at the heart of its business.

---

[1] Experian's VIO data is a representation of all vehicles that are legally registered to operate in a given locale, based on registration data Experian sources from state departments of motor vehicles. (Declaration of Bradley W. Smith ("Smith Decl.") at ¶ 5.)

[2] While Plaintiffs reference in passing the BMW "Sales Loyalty" metric, their motion makes clear that they seek only information relevant to the "Service Effectiveness" metric. This has also been the focus of their requests since Experian made its production. (*See*, *e.g.*, Ball Decl., Exs. 7, 9.)

As Experian has repeatedly explained, producing the same VIO data Experian sent to third-party Urban Science would alone take Experian *at least* 100 hours of employee labor. This is to say nothing of the additional expense Experian would be required to incur if it were required to search for all "documents and communications" even remotely related to the testing or validation of that data—to the extent such documents or communications even exist. And Plaintiffs' request for Experian's "rules and algorithms" is plainly improper. As Plaintiffs know, Experian's rules and algorithms lie at the core of its competitive advantage in the automotive data industry; they are akin to the Coca Cola formula. Plaintiffs have no basis to require Experian to produce this information in a case in which Experian is not even a party, even under the auspices of a protective order.

Moreover, even assuming Experian were to produce *everything* Plaintiffs seek, it would still not suffice. Indeed, as Plaintiffs acknowledge, it is Urban Science—not Experian—that actually generates the Service Effectiveness metric at the heart of this entire dispute. To the extent Plaintiffs wishes to probe the accuracy of the Service Effectiveness metric, they should seek that discovery from Urban Science, not Experian.

Simply put, Experian acted in good faith and fulfilled its obligations under the subpoena by agreeing to run the search terms Plaintiffs proposed and producing numerous responsive documents.  Had it known that Plaintiffs would simply renege on their agreement if they did not receive what they assumed they would, Experian would have never expended the time and resources reviewing and producing those documents. The Court should reject Plaintiffs' indefensible quest for more. Accordingly, Experian requests that the Court deny Plaintiffs' motion to compel in its entirety, and award Experian the costs it incurred in complying with the subpoena.

### III.   PLAINTIFFS' SUBPOENA TO PRODUCE DOCUMENTS

### DEFINITIONS AND INSTRUCTIONS

1.    "All," "any," and "each" shall each be construed as encompassing any and all.

2.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

3.    "AVP" means the BMWNA Added Value Program.

4.    "BMWAG" means Bayerische Motoren Werke Aktiengesellschaft, in the above-captioned action, and each of its directors, offers, employees, members, partners and agents, and each of the directors, officers, employees, partners, members, attorneys, agents or representatives of any of those entities.

5.    "BMWNA" means BMW of North America, LLC, in the above-captioned action, and each of its directors, officers, employees, members, partners and agents, and each of the directors, officers, employees, partners, members, attorneys, agents or representatives of any of those entities.

6.    "Experian," "you," or "your" means Experian Information Solutions, Inc. and each of its directors, officers, employees, members, partners and agents, and each of the directors, officers, employees, partners, members, attorneys, agents or representatives of any of those entities.

7.    "Communication" means the transmittal of information (in the form of

facts, ideas, inquiries or otherwise).

8. "Concerning" means relating to, referring to, describing, evidencing or constituting.

9. "Describe" means, when referring to an event or the circumstances underlying an event, to provide the following information: (a) the time, date, and place of the event; (b) the identification of each Person who participated in the event or was a witness thereto; (c) the subject matter and substance of that which took place; and (d) Identify each Document Concerning the event.

10. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

11. "Identify" with respect to a person means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

12. "Identify" with respect to documents means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

13. "Include" or "Including" shall be construed to incorporate the qualification "without limitation."

14. "Person" means any individual, corporation, proprietorship,

partnership, trust, association or any other entity.

15.   "Sales Loyalty" refers to the component of AVP sometimes known as Dealer Sales Loyalty that ties customers returning to a certain BMWNA dealership to purchase another BMW motor vehicles to certain payments made by BMWNA to the dealer. Sales Loyalty also refers to any methodology, measurement or metric designed or implemented by Experian to quantify, track and report owner sales loyalty at the individual BMWNA dealer level.

16.   "Service Effectiveness" refers to the component of AVP that purports to measure  the number of customers servicing their BMW vehicles at a given BMW dealership versus a calculated potential number BMW service customer available to that dealer, whether located in or out of that dealers assigned market territory.  Service Effectiveness also refers to any methodology, measurement or metric designed or implemented by Experian to quantify, track and report owner service effectiveness at the individual BMWNA dealer level.

17.   The use of the singular form of any word includes the plural and vice versa.

18.   The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all other tenses, moods, or voices, whenever necessary to bring within the scope of any document request all documents that might otherwise be construed to be outside its scope.

19.   If any document has been destroyed, lost, discarded, or misplaced,

1  furnish a list: (a) identifying each such document; and (b) describing the
2
3  circumstances under which the document was destroyed, lost, discarded or
4  misplaced.

5      20.    If you refuse to produce documents in response to a document request,
6
7  in whole or in part, on the ground that compliance would be unduly burdensome, set
8  forth: (a) the number and nature of documents needed to be searched; (b) the
9  location of the document(s); (c) the number of person hours and costs that you
10
11  estimate would be involved in conducting the search; and (d) the nature and extent
12  of any burden other than or in addition to person hours and costs that you estimate
13  would be involved in conducting the search that you claim you would necessarily
14
15  suffer in order to respond to the request.

16      21.    Each request below shall be construed independently, and no request
17  shall be viewed as limiting the scope of any other request.
18
19      22.    The documents produced in response to these numbered requests
20  below shall be produced as they are kept in the usual course of business, or shall be
21  organized and labeled to correspond to the individual requests, and shall include all
22
23  identifying labels or file holders or other markings that indicate the person or other
24  source of the document.

25      23.    To the extent a responsive document is created, generated or received
26
27  by you after you have responded to these requests or after the time for responding to
28  these requests has passed, you are under a duty, pursuant to Rule 26(e) of the

Federal Rules of Civil Procedure, to supplement your response by providing that responsive document as soon as reasonably practicable after the same is created, generated or received by you.

24.    You remain under a duty pursuant to Rule 26(e) of the Federal Rules of Civil Procedure to supplement or correct any responses made by you with respect to the following requests if you later learn that any response provided by you with respect to the following is incomplete or incorrect.

25.    Unless otherwise specified in a request, the period covered is January 1, 2010 to present, or from the first date of documents related to the request to present, whichever is greater.

26.    These document request contemplate the production of electronically stored information ("ESI"), in addition to documents that exist in hard copy format. You are instructed to produce ESI responsive to these document requests in accordance with the "Arent Fox ESI Protocol," which is annexed hereto as Exhibit "A."

## **DOCUMENTS TO BE PRODUCED**

1.    All documents and communications concerning AVP and all its constituent elements (including without limitation Sales Loyalty and Service Effectiveness) including, without limitation, documents and communications concerning: (a) Experian's role, if any, in developing, designing or implementing AVP, Sales Loyalty, or Service Effectiveness; (b) how Sales Loyalty and Service

Effectiveness and any of the other constituent elements of AVP are measured; (c) any alternative measurements or metrics developed, designed or implemented by Experian for BMWNA, BMWAG, or other motor vehicle manufacturer or distributor to quantify, track and report owner sales loyalty and service effectiveness in the United States; (d) statements of work, requests for bids, or other agreements between Experian, BMWNA, and/or BMWAG whereby Experian developed, designed or implemented any component of AVP, Sales Loyalty, and Service Effectiveness, or any other measurement or metric to quantify, track and report owner loyalty or service effectiveness; (e) the data obtained, used, compiled, or considered by Experian in developing, designing, implementing and/or calculating Sales Loyalty and Service Effectiveness (or any other element of AVP), and any such data's reliability, accuracy, and efficacy.

## IV.   EXPERIAN'S RESPONSE TO SUBPOENA
## SPECIFIC OBJECTIONS TO THE INSTRUCTIONS AND DEFINITIONS

Each of the responses below is made subject to and incorporates the following specific objections to the instructions and definitions. Experian has not completed its investigation relating to this action or the Subpoena. As such, the following responses are given, and any documents produced, based on Experian's best knowledge at this time. Experian assumes no obligation to voluntarily supplement or amend its responses or production of documents to reflect or provide information, evidence, documents or things discovered following service of these objections and any documents it may produce. Furthermore, these responses are prepared based on Experian's good faith

1   interpretation and understanding of the Subpoena. These responses are given

2   without prejudice to subsequent revision or supplementation based upon any

3   information, evidence, or documentation that may hereinafter be discovered.

4   Experian's responses to the Subpoena do not constitute admissions or

5   acknowledgments that documents exist or are within the proper scope of

6   discovery.

7       Furthermore, Federal Rule of Civil Procedure Rule 45 requires the

8   subpoenaing party to bear all significant costs associated with compliance with the

9   subpoena. *See Legal Voice v. Stormans Inc.,* 738 F.3d 1178 (9th Cir. 2013).

10  Experian reserves the right to claim all costs and attorneys' fees associated with its

11  responses to the Subpoena.

12      **Time to Respond.**  Experian objects to the Subpoena's instruction to

13  produce documents by 9:00 a.m. on May 13, 2019 as unduly burdensome. This

14  time to respond does not allow reasonable time to identify, compile, review, and

15  produce responsive documents. Experian will produce documents, if any, in

16  response to the Subpoena pursuant to its obligations under the Federal Rules of

17  Civil Procedure and other applicable law. Pursuant to an agreement between

18  counsel for Experian and counsel for Plaintiffs, confirmed by emails dated May 9

19  and 10, 2019, Experian's time to serve written objections and responses was

20  extended until May 20, 2019, and its time to produce documents in response to the

21  Subpoena was extended until June 19, 2019.

22      **Instructions.**  Experian objects to the Subpoena's instructions on the

23  grounds that they are unduly burdensome and purport to require Experian to

24  perform tasks beyond its obligations under the Federal Rules of Civil Procedure.

25  Experian will respond to the Subpoena in accordance with its obligations under the

26  Federal Rules of Civil Procedure and applicable law. In particular, Experian does

27  not plan to produce documents that are not in its possession, custody, or control.

28  Experian also objects to the extent that the Subpoena purports to require it to

produce documents that are in the custody or control of one or more of the parties in this action. Furthermore, Experian objects to the instruction purporting to make the requests continuing in nature pursuant to Federal Rule of Civil Procedure 26(e) as beyond the scope of the requirements for non-party discovery under the Federal Rule of Civil Procedure 45. Also, Experian objects to the Arent Fox ESI Protocol to the extent that it calls for documents to be produced in a manner or form that is unduly burdensome.

**Definitions.**  Experian objects to the Subpoena's definitions to the extent that they render the requests overbroad, unduly burdensome, or not proportional to the needs of the case. Experian also objects to the definitions to the extent they are vague or ambiguous. Specifically, Experian objects to the definitions of the terms BMWAG, BMWNA, Experian, you, and your to the extent that those terms are expanded by words such as directors, offers, employees, members, partners, and agents, and in turn, each of their directors, officers, employees, partners, members, attorneys, agents, or representatives.

**Time Period.**  Experian objects to the time period of "January 1, 2010 to present, or from the first date of documents related to the request to present" as overly broad, unduly burdensome, and not proportional to the needs of the case.

## SPECIFIC OBJECTIONS TO REQUEST NO. 1 TO EXPERIAN OBJECTIONS TO REQUEST NO.1:

Experian objects to this request to the extent it seeks documents that are not relevant to the subject matter of the litigation or are not proportional to the needs of the case considering all the factors that bear on proportionality set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure.

Experian also objects to this request because it is overbroad and unduly burdensome. In particular, this request lacks particularity and makes an overbroad request for "all documents and communications" relating to several broad topics. *See, e.g., Rainbow Sandals, Inc. v. Liberty Mut. Ins. Co.*, 2015 WL 12698302 (C.D.

1    Cal. Aug. 25, 2015) ("Any request for production that seeks 'any and all'

2    documents relating to 'any communications' is overbroad because not all

3    documents responsive to such a request are necessarily relevant to the claims or

4    defenses."). The request is also overly broad with respect to the time period covered

5    by the request, which covers a period of over nine years.

6        Experian further objects to this request because it seeks documents and

7    communications, should they exist, that may be available from the parties in this

8    action, namely BMWNA and BMWAG. In issuing the Subpoena, the Federal Rules

9    of Civil Procedure impose an affirmative obligation on Plaintiffs to "take

10   reasonable steps to avoid imposing undue burden or expense on a person subject to

11   the subpoena." Fed. R. Civ. P. 45(d)(1); *see also United States v. C.B.S., Inc.*, 666

12   F.2d 364, 371-72 (9th Cir. 1982); *Lemberg Law LLC v. Hussin*, 2016 WL 3231300,

13   at *5 (N.D. Cal. June 13, 2016).

14       Experian objects to this request to the extent it prematurely seeks expert

15   discovery.

16       Experian further objects to this request to the extent it calls for the disclosure

17   of documents protected by attorney-client privilege, attorney work-product

18   protection, the right of privacy of any person or entity, or any other privilege or

19   protection.

20       Experian objects to this request on the grounds that it seeks confidential,

21   proprietary, and trade secret information from Experian or other third-parties.

22   Experian will produce documents in response to the request only after the Court

23   enters an appropriate protective order, or the parties reach a confidentiality

24   agreement, governing third-party discovery or otherwise extending the protections

25   of the Stipulated Protective Order For Discovery, dated December 6, 2018 (ECF

26   No. 121), to non-party Experian.

27       Experian also objects to the definition of the terms BMWAG, BMWNA, and

28   Experian because they render the request overbroad, unduly burdensome, and not

ARENT FOX LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:20-mc-00025                    18                    JOINT STIPULATION RE:
                                                               PLAINTIFFS' MOTION TO COMPEL

1   proportional to the needs of the case. Experian objects to the definitions of these

2   terms to the extent that they purport to include all directors, offers, employees,

3   members, partners, and agents, and in turn, each of their directors, officers,

4   employees, partners, members, attorneys, agents, or representatives.

5       Subject to the foregoing, as well as the specific objections to the Subpoena's

6   instructions and definitions, Experian responds that it will produce responsive, non-

7   privileged documents, if any, as may be relevant to the subject matter and

8   proportional to the needs of the litigation.

9   **V.    PLAINTIFFS' POSITION**

10      As it relates to the current dispute, the Subpoena requested, in part, the

11  production of:  the data obtained, used, compiled, or considered by Experian in

12  developing, designing, implementing and/or calculating Sales Loyalty and Service

13  Effectiveness (or any other element of AVP), and any such data's reliability,

14  accuracy, and efficacy."

15      Outside of *ad hoc* issues raised by BMW, Experian has produced no such

16  documents. No studies of the metrics or how well they function, or the accuracy

17  and reliability of the underlying data were produced. Having reviewed the

18  documents and issues, Plaintiffs determined that Experian must fully comply with

19  the letter of the Subpoena, and produce all of the data used to calculate the UIO

20  (Units in Operation) input for the Service Effectiveness metric for Braman Miami

21  and Braman West Palm Beach, from inception of the metric to present. This

22  includes, but is not limited to, VIN and registration level data for each UIO for each

23  store's PMA, structure lists to determine the boundaries of that data set, all

24  documents and communications concerning all testing and validation Experian did

25  of the UIO data provided to BMW and/or Urban Science for use in calculating

26  Service Effectiveness, and the rules and algorithms that Experian applied to its raw

27  data set to determine if a UIO was present in a given zip code or geography for

28  Service Effectiveness purposes.

1    **Plaintiffs' Contentions:**

2          A.      **Experian Has Yet to Produce Fully Responsive Documents**

3                  **Related to Sales Loyalty and Service Effectiveness.**

4          Following initial meet and confer efforts in response to Experian's purported

5    objections, Plaintiffs were conditionally willing to forgo the portion of the request

6    for the underlying data on the assumption that Experian would produce documents

7    evidencing the auditing and testing of the Sales Loyalty and Service Effectiveness

8    methodologies and their underlying data.  Outside of *ad hoc* issues raised by BMW,

9    Experian has produced no such documents. No studies of the metrics or how well

10   they function, or the accuracy and reliability of the underlying data were produced.

11   Nothing of the kind.  Plaintiffs never agreed that Experian's prior production

12   fulfilled the terms of the Subpoena.

13         Having reviewed the documents and issues, Plaintiffs determined that

14   Experian must fully comply with the letter of the Subpoena, and produce all of the

15   data used to calculate the UIO (Units in Operation) input for the Service

16   Effectiveness metric for Braman Miami and Braman West Palm Beach, from

17   inception of the metric to present. This includes, but is not limited to, VIN and

18   registration level data for each UIO for each store's PMA, structure lists to

19   determine the boundaries of that data set, all documents and communications

20   concerning all testing and validation Experian did of the UIO data provided to

21   BMW and/or Urban Science for use in calculating Service Effectiveness, and the

22   rules and algorithms that Experian applied to its raw data set to determine if a UIO

23   was present in a given zip code or geography for Service Effectiveness purposes.

24         B.      **Documents in Experian's Possession Related to Sales Loyalty and**

25                 **Service Effectiveness are Relevant and Necessary.**

26         Experian's cooperation is required as there is a substantial need for these

27   documents to establish Plaintiffs' claims and oppose Defendants defenses and

28   counter claim related to sales performance in the action. Plaintiff is seeking a

1  discrete set of documents and data that are highly relevant to the subject matter of
2  this litigation.  The heart of this case is the AVP program.  The underlying data for
3  the metrics which were used to measure the performance of the dealers under the
4  AVP program was entirely provided by Experian.  Indeed, Experian developed the
5  Dealer Sales Loyalty and Service Effectiveness products.  How Experian developed
6  these programs, how they compare to other, similar programs, and whether the data
7  used by Experian is reliable and accurate are issues that are central to this case.

8  Additionally, on a motion to compel discovery, the party resisting discovery
9  bears the burden of showing that the information requested is not discoverable.
10  *Sullivan v. Prudential Ins. Co. of America*, 233 F.R.D. 573, 574-75 (C.D. Cal.
11  2005). Experian has not, and cannot, state any set of facts in support of its
12  contention that the documents are not relevant.

13  **C.    There Is No Undue Burden on Experian and the Records Are Not**
14  **Available from Any Other Source.**

15  The justification for compliance with the Subpoena is underscored by the fact
16  that production of documents should not require extensive time or effort, as it does
17  not involve voluminous search hits across a vast eDiscovery database. The data
18  relating to these two markets is easily identifiable and producible—just as it should
19  be for Experian to substantiate and test its data.  Additionally, Plaintiffs understand
20  that Experian has previously provided the requested data directly to a third party—
21  Urban Science. Accordingly, Plaintiffs request all such data that Experian already
22  gave a third party on this issue, as it relates to Braman Miami and Braman West
23  Palm Beach.

24  There is no undue burden, particularly assuming Experian stored a copy of
25  the materials already provided to Urban Science. To facilitate, Plaintiffs previously
26  offered to provide zip code structure lists for Braman's PMAs should that assist
27  Experian in producing the requested documents.

28

1    With respect to any restrictions or trade-secret concerns, which Experian has
2    raised but not established, there is already a protective order in place in the Florida
3    action which would fully resolve Experian's concerns. See *AECOM Energy &*
4    *Construction, Inc. v. Ripley* (C.D. Cal., Apr. 26, 2018, No. CV175398RSWLSSX)
5    2018 WL 4705914, at *10 (Granting motion to compel production where opposing
6    party had "not shown why the Protective Order would be insufficient to protect
7    their privacy and trade secret concerns."); *Haghayeghi v. Guess?, Inc.* (S.D. Cal.
8    2016) 168 F.Supp.3d 1277, 1282 (The Court granted a motion to compel further
9    response to discovery requests where there was already a protective order "in place
10   to protect their privacy interests.). Further, in its own objections Experian stated
11   that "Experian will produce documents in response to the request only after the
12   Court enters an appropriate protective order…governing third-party discovery or
13   otherwise extending the protections of the Stipulated Protective Order for
14   Discovery, Date December 6, 2018 (ECF No. 121), to non-party Experian." To the
15   extent that Experian believes the existing protective order doesn't cover the
16   documents they produce, the documents must still be produced, but the court may
17   modify the protective order to protect Experian's production. See *Juno*
18   *Therapeutics, Inc. v. Kite Pharma, Inc.* (C.D. Cal., Apr. 29, 2019, No. CV 17-7639-
19   SJO-KSX) 2019 WL 3069009, at *6 (In granting a Motion to Compel production of
20   third party documents, the Court stated that "[t]he Protective Order can be modified
21   to heighten the protections afforded to any [third party] documents produced
22   pursuant to the Subpoena.")

23   Finally, the information is not readily available from another source.
24   Defendant has asserted that it does not have access to this data directly due to its
25   purported agreements with Experian. Urban Science is a retained expert of BMW
26   and also did not create the raw/native data sought by Plaintiffs, which is in
27   Experian's possession.

28

## VI.   EXPERIAN'S POSITION

Plaintiffs' motion is nothing more than an attempt to take a second bite at the apple after Plaintiffs made faulty assumptions and miscalculations. As demonstrated below, Experian has complied with its obligations under the subpoena, and it should not be required to make any further productions. This is particularly true, considering the information Plaintiffs purportedly need is maintained by another entity, Urban Science. Accordingly, the Court should deny Plaintiffs' motion in its entirety, and award Experian its costs for reviewing and producing documents.

### A.   Procedural History

To begin, Plaintiffs' motion completely ignores the lengthy procedural history surrounding their subpoena. This is not surprising, as the record makes plain that Plaintiffs have repeatedly shifted the scope and focus of their subpoena, and already required Experian to incur a significant burden searching for documents based on search terms Plaintiffs proposed.

Plaintiffs served the subpoena on or about April 18, 2019.[3] Although Plaintiffs propounded only one request, that request laid out five subparts and broadly sought "[a]ll documents and communications concerning AVP and all its constituent elements." (Ball Decl., Ex. 1 at 6.) Experian served its objections on May 20, 2019, explaining (among other things) that Plaintiffs' request "lack[ed] particularity and ma[de] an overbroad request for 'all documents and communications' relating to several broad topics." (Ball Decl., Ex. 2 at 4.)

On May 9 and 29, 2019, counsel for Experian and Plaintiffs met and conferred regarding the scope of the subpoena. (Ball Decl., Ex. 3 at 1.) Plaintiffs' counsel represented that they did not want to get into the nitty gritty of Experian's relationship with BMW, but simply "sought a limited, high-level production of documents from

---

[3] On May 20, 2019, Plaintiffs issued a subpoena seeking a Local Rule 30(b)(6) deposition of Experian. Plaintiffs have not addressed that deposition since November 14, 2019, and have seemingly abandoned their subpoena, particularly because fact discovery is at conclusion in the underlying matter. (*See* Ball Decl., ¶ 9, Ex. 7 at 1.)

1   Experian about Sales Loyalty and Service Effectiveness." (Ball Decl., Ex. 3 at 1.)

2   Consistent with that understanding, Experian produced 90 pages of documents on

3   June 19, 2019. (*Id.*) These documents included the terms and conditions applicable to

4   Experian and BMW's relationship, a training manual concerning the various BMW

5   metrics, information about the various data sources from which Experian collects

6   vehicle data, high-level information about the methodologies Experian uses to match

7   purchased vehicles with owned vehicles based on vehicle registrations, and several

8   other documents evidencing Experian's relationship with BMW. (Ball Decl. at ¶ 4.)

9           After going dark for nearly three months, on September 3, 2019, Plaintiffs

10   resurfaced and shifted course, no longer seeking merely high-level documents

11   concerning Experian's relationship with BMW. Instead, they contended that

12   Experian's good-faith production was "facially absurd" and, as a result,

13   "demand[ed] a meet-and-confer." (Ball Decl., Ex. 4 at 5.) On September 10, 2019,

14   counsel for the parties met and conferred. (Ball Decl., Ex. 5 at 1.) On that call, the

15   parties agreed that Plaintiffs would propose search terms that would satisfy

16   Experian's obligations under the subpoena. (Ball Decl. at ¶ 7.) Plaintiffs' counsel

17   *never* conditioned this agreement on Experian's production of any specific

18   documents. (*Id.*) And Plaintiffs certainly never raised the issue of producing raw

19   data, nor mentioned Experian's proprietary business rules and algorithms. (*Id.*)

20   Rather, the only issue that was discussed was potential limiters on Plaintiffs' terms

21   in the event some searches produced a high volume of documents. (*Id.*) Indeed,

22   Experian would not have agreed to run Plaintiffs' search terms without an

23   understanding that doing so would discharge its obligations under the subpoena.

24   (*Id.*) In fact, when Experian has explicitly pressed Plaintiffs' counsel on this point

25   in writing, Plaintiffs' counsel has never denied the existence of the parties'

26   agreement. (*See* Ball. Decl., Ex. 9 at 1-2, 6.)

27           On October 3, 2019, Plaintiffs' counsel sent Experian's counsel their

28   proposed search terms. Consistent with their agreement, Plaintiffs proposed both

broad and narrow search terms, including "BMW & 'Sales Loyalty'"; "BMW /10 'Sales Loyalty'"; "'Sales Loyalty' /10 problem"; "'BMW' & 'Service Effectiveness'"; "'BMW /10 'Service Effectiveness'"; "'Service Effectiveness' /10 problem." (Ball Decl., Ex. 6 at 2.) The parties agreed that Experian's search would be limited to the time-period between April 2013 and January 2018. (*Id.* at 1.)

Experian ran all of Plaintiffs' searches and produced all responsive documents, expending approximately $20,278.86 in counsel's review and production of documents and $465.09 associated with document hosting costs. (*See* Smith Decl. at ¶ 16.) On November 12, 2019, Experian produced an additional 438 documents based on the results of Plaintiffs' searches. (Ball Decl. at ¶ 10.)

Unsatisfied, Plaintiffs wrote to Experian on November 25, 2019, claiming that Experian's production was deficient despite the parties' prior agreement. Plaintiffs did not criticize Experian's search. Nor did they deny the existence of the parties' agreement. Instead, they merely complained that they had been "willing to forgo the portion of the request for the underlying data *on the assumption* that Experian would produce documents evidencing the auditing and testing of the Sales Loyalty and Service Effectiveness methodologies and their underlying data." (Ball Decl., Ex. 8 at 1 (emphasis added).) In addition, Plaintiffs contended—for the first time—that they intended to "conduct [] auditing and testing" of Experian's data "themselves." (*Id.*) In response, Experian explained that this was a "substantial change in position by the plaintiffs," and it made clear that "Experian agreed to run [Plaintiffs' search terms] in order to satisfy its obligations under the subpoena." (Ball Decl., Ex. 9 at 6.) Plaintiffs again did not deny the existence of this agreement. (*Id.*) Nevertheless, the parties continued to meet and confer in an effort to reach a compromise regarding Plaintiffs' newfound requests. (Ball Decl. at ¶¶ 13-15.)

On December 27, 2019, Plaintiffs' counsel wrote to Experian's counsel, again expanding the scope of the request by seeking Experian's proprietary

business rules and algorithms, and enlarging the relevant time period. (Ball Decl., Ex. 9 at 3-4.)  Experian's counsel responded on January 10, 2020, reiterating the parties' prior agreement and explaining the undue burden Experian would incur in producing the requested data and information. (*Id.* at 1-2.) Experian also explained the sensitivity of its proprietary information, even with a protective order in place. (*Id.* at 2.) As a result, Experian made clear that it would "not agree to produce more information, and deem[ed] its obligations under the subpoena to be satisfied." (*Id.*)

On January 24, 2020, Plaintiffs' counsel wrote to Experian counsel in a "final attempt to meet and confer prior to filing a motion to compel." (Ball Decl., Ex. 10 at 1.) Again, Plaintiffs did not deny the existence of the parties' agreement. Instead, Plaintiffs claimed—for the first time—that their agreement was somehow "condition[ed]" on Experian's production of "documents evidencing the auditing and testing of the Sales Loyalty and Service Effectiveness methodologies and their underlying data." (*Id.* at 2.) Despite additional meet-and-confer efforts, the parties could not reach a compromise and this motion followed. (Ball Decl. at ¶ 15.)

**B.   Experian Discharged Its Duties under the Parties' Agreement**

As a non-party to this litigation, there can be no dispute that Experian has acted in good faith and fully complied with the subpoena. Although Plaintiffs contend that Experian failed to fulfill its obligations, Experian has produced numerous documents in this case that demonstrate Experian's relationship with BMW and generally describe the services Experian provided. (*See, e.g.*, Ball Decl. at ¶ 4.) Furthermore, Experian *only* agreed to run Plaintiffs' search terms with the understanding that doing so would satisfy its obligations under the subpoena. (Ball Decl. at ¶ 7, Ex. 9 at 1, 6.) Indeed, that was the *very reason* Plaintiffs developed the terms. In fact, the Southern District of Florida—where Plaintiffs' underlying action is pending—expressly instructs parties to agree on "search method(s), including specific words or phrases or other methodology, that will be used to identify discoverable ESI and *filter out ESI that is not subject to discovery*." *See* Checklist

for Rule 26(f) Conference Regarding Electronically Stored Information, U.S. District Court for the Southern District of Florida, available at https://www.flsd.uscourts.gov/sites/flsd/files/forms/ESI-Checklist.Rule-16.1..pdf (last accessed Feb. 19, 2020; emphasis added). Tellingly, Plaintiffs do not claim that the never agreed to the search terms to filter out ESI that would not be the subject of discovery. To the contrary, they simply argue that they "assum[ed] that Experian would produce documents evidencing the auditing and testing of the Sales Loyalty and Service Effectiveness methodologies and their underlying data." (Ball Decl., Ex. 8 at 1; Ex. 10 at 2.) But Plaintiffs cannot now walk back the parties' agreement simply because they made faulty and unstated assumptions about the information they expected to receive from their proposed terms.

Moreover, beyond their generalized speculation that Experian should produce more documents, Plaintiffs fail to substantiate their argument that Experian has any more relevant documents to produce. *See Swanson v. ALZA Corp.*, No. 12-cv-04579, 2013 WL 5538908, at *3 (N.D. Cal. Oct. 7, 2013) ("Although the parties did not agree upon the relevant search terms after several meetings, a party's suspicion that all responsive documents have not been produced, without more, is generally insufficient to warrant an order compelling production."). While Plaintiffs claim they want "all documents and communications concerning all testing and validation Experian did of the UIO data provided to BMWNA and/or Urban Science," Plaintiffs have no basis to claim that any further documents exist. As Plaintiffs acknowledge, Experian produced documents related to *ad hoc* issues raised by BMWNA. Plaintiffs' request for additional documents amounts to nothing more than a fishing expedition to see what else might exist. This is improper and should not be permitted. *See Rivera v. NIBCO, Inc*., 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in 'fishing expedition[s].'").

1    Simply put, Plaintiffs should be held to their agreement, and Experian should
2    not be required to incur any further expense under the subpoena.

3    **C.    The Documents Plaintiffs Seek Are Not Relevant Or Necessary**

4    Plaintiffs also fail to establish a sufficient need to obtain the requested
5    information. Plaintiffs contend that this information is needed because the
6    "underlying data for the metrics which were used to measure the performance of the
7    dealers under the AVP program was entirely provided by Experian." But, as
8    Plaintiffs know, Experian merely sent its VIO data to a third-party data processor,
9    Urban Science, which exclusively controls the processing and output of the Service
10   Effectiveness metric. (Smith Decl. at ¶ 7-8.) Thus, to gain a complete understanding
11   of how the Service Effectiveness metric was created—including what information
12   Urban Science relied upon or manipulated in generating that metric—Plaintiffs
13   should have requested that information from Urban Science or BMW, not Experian.

14   Plaintiffs' conclusory assertions do not establish otherwise. Although
15   Plaintiffs contend that BMW has "asserted that it does not have access to [the VIO]
16   data directly due to its purported agreements with Experian," Plaintiffs
17   conspicuously fail to cite any evidence to substantiate their contention. Similarly,
18   Plaintiffs contend that Urban Science is a retained expert of BMW, implying that
19   Plaintiffs cannot seek any factual discovery from Urban Science. But this rationale
20   equally applies to Experian, which is also a retained expert in the case. (Ball Decl.,
21   Ex. 11 at 1 (arguing that fact discovery is appropriate as to Experian even though
22   "BMWNA has retained Experian to provide expert testimony" because "Experian
23   had significant involvement in the events which gave rise to the current lawsuit").)

24   Plaintiffs' reliance on *Sullivan v. Prudential Insurance Co. of America*, 233
25   F.R.D. 573 (C.D. Cal. 2005) is misplaced. There, the court addressed discovery
26   exchanged and disputed between *parties* to a litigation. Contrary to Plaintiffs'
27   contentions, it did not address a third-party's burden to show that the information
28   requested is not discoverable. Indeed, as the Ninth Circuit has made clear, the

balance of equities and the parties' respective burdens are different where, as here, the information being requested is from a non-party to the litigation. *See Dart Indus. Co. v. Westwood Chem. Co*., 649 F.2d 646, 649 (9th Cir. 1980) (explaining that there "appear to be quite strong considerations indicating that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents" (citations omitted)).

At bottom, if Plaintiffs wish to determine the "accuracy" of the Service Effectiveness metric, they should subpoena Urban Science (which creates the Service Effectiveness metric) and/or the Florida DMV (which is the source of the registration data at the heart of the metric). Indeed, Urban Science is the only entity that can explain how it manipulated Experian's data and produced the BMW Service Effectiveness metric.  Plaintiffs are simply barking up the wrong tree.

### D.    Plaintiffs' Request Imposes Undue Burdens on Experian

Even if the Court ignores the parties' prior agreement *and* determines that Plaintiffs' sought-after discovery is necessary and relevant, the Court should still reject Plaintiffs' motion. Indeed, forcing non-party Experian to produce additional discovery would impose an undue burden, particularly in light of the burden Experian has already incurred in responding to Plaintiffs' shifting requests. *Cf.* Fed. R. Civ. P. 45(d)(1) (requiring the party "issuing and serving a subpoena [to] take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena"); *see also United States v. C.B.S., Inc.*, 666 F.2d 364, 371-72 (9th Cir. 1982).

First, as Experian has explained, producing the raw VIO data Experian sent to Urban Science would be unduly burdensome. To begin, Experian's contractual relationships with the state DMVs significantly limit the persons with whom Experian may share the VIO data to those that certify a permitted use under the Driver's Privacy Protection Act. (Smith Decl. at ¶ 12.) Plaintiffs have not even attempted to demonstrate that they have a permitted use here. Furthermore, while

1   Experian maintains archives of the VIO data it sends to subscribers, such archived

2   files represent nationwide VIO data, almost all of which relates to vehicles outside

3   the scope of this matter. (Smith Decl. at ¶ 9.) Thus, to comply with Plaintiffs' most

4   recent demands, Experian would need to pull the relevant archive and expend

5   significant effort culling that data set to include only the specific data relevant to

6   this case—*i.e.*, information concerning only the Miami and West Palm Beach

7   Markets. (*Id*.) Afterward, Experian would need to compare that data set to the file

8   that would have previously been sent to Urban Science to ensure that it is producing

9   the same data. (*Id.* at ¶ 10.) Experian would then need to perform quality control

10  analysis to ensure that no part of the data set is corrupted. (*Id*.) Finally, Experian

11  would need to upload the data into a transmission interface and develop encryption

12  protocols for transmission to Plaintiffs. (*Id*.) And Experian will undoubtedly need

13  to assist Plaintiffs in interpreting the data. (*Id*.) This process alone would likely take

14  at least 100 hours of Experian employee labor, diverting Experian employees from

15  their day-to-day, revenue producing tasks. (*Id.* at ¶ 11.)

16          Second, Plaintiffs' request that Experian engage in further email review

17  would likewise create an undue burden. Plaintiffs seek all documents and

18  communications concerning all testing and validation Experian performed on the

19  VIO data it provided to Urban Sciences. But Experian does not ordinarily perform

20  "testing or validation" on particular VIO data sets it sends to third parties, beyond

21  ensuring that the data is not corrupted. (*Id.* at ¶ 14.) Rather, Experian evaluates the

22  data in its VIO database as part of its daily operations to ensure that the data

23  accurately reflects the number of vehicles legally authorized to be operated in the

24  United States. (*Id*.) Thus, any documents or communications regarding the data

25  Experian sent to Urban Sciences, to the extent any exist, would not be in one place.

26  (*Id.* at ¶ 15.) Instead, identifying and producing this information would require

27  reviewing the emails and computer files of several different Experian employees

28  who might have been involved in sending the data to Urban Sciences, to the extent

1   such testing or validation was performed. (*Id.*) This review would largely replicate

2   the review Experian has already conducted in this case, given the breadth of

3   Plaintiffs' search terms. And producing this information would require significant

4   Experian employee time that would again divert Experian employees from their

5   day-to-day, revenue producing tasks. (*Id.*)

6          Third, Plaintiffs' request for all the rules and algorithms that Experian applies

7   to its raw data to generate its VIO data is completely improper. These proprietary

8   rules and algorithms are the core of Experian's automotive data business. (*Id.* at

9   ¶ 18.) Experian goes to great lengths to keep these rules and algorithms secret, and

10   only a limited number of Experian employees have access to them. (*Id.*) Indeed,

11   Experian does not give its customers—or anyone else—access to these rules and

12   algorithms. (*Id.*) If an entity or individual operating in the automotive or consumer

13   data space—including the Plaintiffs and Defendants in the underlying lawsuit—

14   obtained these rules and algorithms, that entity could develop a product similar to

15   Experian's, irreparably damaging Experian's competitive advantage. (*Id.*) In the

16   context of third-party subpoenas, requests for this kind of extremely sensitive

17   information must be prohibited, regardless of a protective order in the underlying

18   case. *See* Fed. R. Civ. P. 45(d)(3)(B)(i) (permitting court to quash of modify

19   subpoena "if it requires . . . disclosing a trade secret or other confidential research,

20   development, or commercial information"); *see also Painters Joint Comm. v.*

21   *Employee Painters Tr. Health & Welfare Fund*, No. 2:10-cv-01385-JCM, 2011 WL

22   4549232, at *1 (D. Nev. Sept. 29, 2011) (quashing subpoena that sought third

23   party's "commercially sensitive materials that are vitally important to its ability to

24   remain competitive").

25          Plaintiffs' conclusory contentions do not establish otherwise. While Plaintiffs

26   assert that "production of documents should not require extensive time or effort, as

27   it does not involve voluminous search hits across a vast eDiscovery database," this

28   is based on nothing more than rank speculation. As Experian has explained,

complying with Plaintiffs' requests will require *at least* 100 hours of Experian employee time, in addition to a search of Experian's internal records for "all documents and communications" regarding the testing of Experian's VIO data. (Smith Decl. at ¶ 11; *see also* Ball Decl. Ex. 9 at 2.) And reviewing any documents that are collected will additionally require significant attorney review time. Experian should not be required to incur this additional burden, particularly in light of its productions to date.

### E. Experian Is Entitled to Reimbursement of Its Costs

In its initial objections to Plaintiffs' subpoena, Experian reserved the right to seek its costs in complying with the subpoena. (Ball Decl., Ex. 2 at 2.) Because Experian incurred significant expenses searching for, reviewing, and producing documents, it is entitled to recover those costs. *See C.B.S.*, 666 F.2d at 368 ("Given that the [third-parties] expressly reserved their right to seek reimbursement . . . we discern nothing in Rule 45 that precludes post-compliance reimbursement of costs.").

"Although party witnesses must generally bear the burden of discovery costs, the rationale for the general rule is inapplicable where the discovery demands are made on nonparties." *Id.* at 371. This is because "[n]onparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *Id.* Accordingly, Rule 45 "requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184-85 (9th Cir. 2013) (concluding that costs were appropriate because $20,000 was "significant" and noting that as little as "$9,000 may be sufficiently significant"). As courts have recognized, "Rule 45 expenses resulting from compliance may include some attorneys' fees," including "production-related legal tasks like document review, creating a privilege log, and

1   drafting protective orders." *Stormans Inc. v. Selecky*, No. 07-cv-5374, 2015 WL
2   224914, at *5 (W.D. Wash. Jan. 15, 2015).

3       Experian has already paid $86,712.51 in costs and fees through December
4   2019, of which approximately $20,278.86 was associated with Experian's counsel's
5   review and production of documents and $465.09 was associated with document
6   hosting costs. (Smith Decl. at ¶ 16.) Experian is entitled to recover these expenses.
7   *See Legal Voice*, 738 F.3d at 1184-85. Moreover, to the extent the Court orders
8   Experian to produce further discovery in response to Plaintiffs' motion, the Court
9   should order Plaintiffs to pay any further expenses—attorney fees or otherwise—
10  associated with the review and production of that discovery.

11      **F.    Plaintiff Is Not Entitled to Sanctions**

12      Plaintiffs' request for sanctions borders on the absurd. There can be no
13  dispute that Experian produced numerous documents in good-faith based on an
14  understanding that doing so would satisfy its duties under the subpoena. Indeed,
15  Plaintiffs do not (and cannot) cite any authority to support their request for
16  sanctions. And, while Plaintiffs vaguely argue that they will address the amount of
17  sanctions in their reply brief, this is an end-run around the Local Rules' joint
18  stipulation procedures, which require Plaintiffs to serve on Experian "all
19  declarations and exhibits to be offered in support of the moving party's position"
20  with its draft of this joint stipulation. C.D. Cal. L.R. 37-2.2.  Here, Plaintiffs failed
21  to serve any declarations or exhibits supporting their request for sanctions, and they
22  do not otherwise substantiate their request. Accordingly, the Court should ignore
23  Plaintiffs' half-baked request for sanctions.

24  **VII.  CONCLUSION**

25      **A.    Plaintiff's Conclusion**

26      This Court should issue an order:

27      1.  Compelling Defendants to produce all responsive documents without
28          objections or redactions within ten (10) days of this Court's order;

1        2.  Sanctions in the amount to be provided with Plaintiffs' supplemental

2           brief for their motion; and

3        3.  Setting such other relief as this Court deems just and proper in

4           accordance with the Federal Rules of Civil Procedure and equity.

5        **B.**    **Experian's Conclusion**

6          The Court should deny Plaintiffs' motion to compel and issue an order

7    concluding that Experian has completely satisfied its obligations under the

8    subpoena. Furthermore, the Court should order Plaintiffs to pay Experian's

9    expenses incurred in responding to the subpoena, including the attorney fees related

10   to reviewing and producing documents.

11   Dated:  March 11, 2020          Respectfully submitted,

12                                             **ARENT FOX LLP**

14                                       By:   */s/Shelby A. Cummings*

15                                             George N. Koumbis
                                               Shelby A. Cummings

16                                         Attorneys for Plaintiffs

17                                         BRAMAN MOTORS, INC. d/b/a BRAMAN
                                           BMW, and BRAMAN MOTOR CARS, INC.

18                                         d/b/a BRAMAN BMW WEST PALM
                                           BEACH

19   Dated:  March 11, 2020          **JONES DAY**

21                                         By: /s/ Ryan D. Ball

22                                             RYAN D. BALL

23                                         Attorneys for Defendant
                                           EXPERIAN INFORMATION SOLUTIONS,

24                                         INC.

25   **ATTESTATION**:    I, George N. Koumbis, in accordance with Local Rule

26   5-4.3.4(a)(2)(i), attest that Ryan D. Ball, and on whose behalf this filing is

27   submitted, concurs in the filing's content and has authorized the filing.

28   Dated:  March 11, 2020          By: _____
                                           George N. Koumbis